**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN BANKS, | ) |
| Plaintiff, | ) |
| v. | ) No. 10 cv 4060 |
| | ) Judge Sharon Johnson Coleman |
| ENOVA FINANCIAL, CASHNETUSA, CASHAMERICA, | ) |
| Defendants. | ) |

**Memorandum Opinion and Order**

Plaintiff, Jonathan Banks, filed a Complaint alleging that defendants, Enova Financial, CashNet USA, and CashAmerica (collectively "defendants" or "CashNet"), discriminated and retaliated against him based on his race and religion. CashNet moves for summary judgment on all of Banks' claims. For the reasons stated herein, this Court grants CashNet's motion for summary judgment.

**Background**

The following facts are undisputed. Banks did not file response brief or supporting materials as required by Local Rule 56.1(b), therefore, the Court accepts as true all material facts set out in CashNet's LR 56/1(a) statement. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

Banks is an African-American man who was an employee of CNU Online Holdings, LLC f/k/a Cash America Net Holdings, LLC ("CashNet"), from February 2007 until November 13, 2008, in Lake Bluff, Illinois. Prior to working at CashNet, Banks had obtained employment through temporary employment agencies. Plaintiff's brother, Joseph Banks, is employed by

CashNet and was promoted in 2009. In February 2007, Joseph Banks arranged a job interview for his brother at CashNet. Jonathan Williams conducted the interview, during which he told Banks that the open position was Sunday through Thursday, from 8:00 a.m. to 4:30 p.m. Banks did not reference his religion during the interview. On his job application, Banks did not state that he was unable to work on Sundays. Banks testified at his deposition that he did not want his religion preventing him from being hired. He reported for his first day of work on February 20, 2007, as an in-bound collections employee and immediately received training.

     CashNet's Lake Bluff, Illinois, office contains the loan processing, customer service and collections departments, employing approximately 200 employees. The collections department is divided into in-bound and out-bound collections teams. Banks worked in the in-bound collections division for the duration of his employment with CashNet. In-bound collections employees field calls from customers. Out-bound collections employees contact customers who are past-due on payments. In 2007 and 2008, approximately half of the employees working at the Lake Bluff office were African-American.

     Banks had several direct supervisors during his employment: LeCarl Jones and Jonathan Williams, who are African-American, and Karen Schwerman and Nick Loika, who are white. Each of Banks' direct supervisors reported to the Section Manager, Kwhamec Rojas. Rojas testified that, although he is mixed-race, he considers himself African-American. No one associated with CashNet made any derogatory comments about Banks' race or religion.

     During the first few months of his employment, Banks asked his supervisor, LeCarl Jones, if his Sunday schedule could be changed. Jones told him that he might be able to work the 3:00 p.m. to midnight shift, but Banks declined the shift change. In July 2007, Jones issued a written warning to Banks, which Banks admitted was not based on his race. Banks applied for a

promotion to section manager, but was ineligible for promotion due to the written warning. In early September 2007, Schwerman became Banks' director supervisor. Schwerman and Rojas began to counsel Jones in an effort to resolve some of his performance issues. Banks was written up again after he provided inaccurate bank information to another CashNet department that resulted in a non-customer's bank account being debited. In October 2007, Schwerman gave Banks a verbal warning after he incorrectly split payments. On January 20, 2008, Banks complained to the human resources department that Schwerman was harassing him based on race. CashNet investigated and concluded that no harassment had occurred. On January 15, 2008, Loika replaced Schwerman as Banks' direct supervisor. Approximately one month later, Loika transferred to another department and Williams became Banks' direct supervisor.

In January 2008, Rojas met with Banks to discuss Banks' written discipline. During the meeting, Banks asked Rojas if his schedule could be changed, but Banks did not reference his religion or his desire to attend church services as a reason for requesting a schedule that did not include Sundays. Banks testified that the reason he requested the change at that time was to avoid Schwerman. During a monthly performance review, Banks asked Rojas if his schedule could be changed for a second time, but again he did not reference his religion or a desire to attend Sunday services. Banks told Rojas that the Sunday to Thursday shift was not as lucrative as other shifts because the in-bound collections department was busier on Fridays than Sundays. On July 16, 2008, Banks made a third request to Rojas for a schedule change, which Rojas also denied. Also in July 2008, Banks asked Rojas if he could switch to the Sunday afternoon shift, but that shift had been discontinued due to low call volume.

In the fall of 2008, Banks and his brother Joseph exchanged a series of emails in which they discussed Banks' proposed email to Rojas complaining about the Sunday to Thursday shift.

3

In the draft email, Banks did not mention his religious practices or desire to attend Sunday services, but complained about his perceived financial disadvantage by not working on Fridays. In the email that Banks eventually sent to Rojas, he did not mention religion. Sometime after mid-July 2008, Banks requested multiple Sunday vacation days, which CashNet approved. In October 2008, Banks asked Rojas to transfer him to the out-bound collections division. Rojas denied the request because he believed Banks was better suited to in-bound collections. The transfer also would have been a demotion.

On October 9, 2008, a customer called CashNet and complained about Banks' treatment of her. On October 16, 2008, Banks failed to arrange the payments requested by a customer. CashNet issued a written warning to Banks. On October 22, 2008, CashNet issued a second and final written warning after he ignored details in a customer account and set up payments without the customer's approval. Two weeks after the final warning, another incident occurred between Banks and a customer, Jamie Thompson. Thompson called CashNet to report Banks' misconduct. As part of CashNet's investigation into the complaint, Rojas listened to the audio recording of the calls before deciding to discharge Banks. CashNet terminated Banks' employment on November 13, 2008. Banks filed an EEOC charge on November 24, 2008.

**Legal Standard**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, the non-moving party fails to

respond as set forth in LR 56.1(b), the Court does not automatically grant summary judgment, but still reviews the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *See Cracco*, 559 F.3d at 632; *Schuster v. Lucent Technologies, Inc.,* 327 F.3d 569, 573 (7th Cir. 2003). However, as noted above, the facts presented by CashNet are undisputed.

**Discussion**

Banks alleges in his Complaint that he was denied promotions, denied accommodations due to his religion and harassed due to his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. CashNet moves for summary judgment arguing that the allegations of harassment, discrimination or retaliation based on Banks' religion and race that occurred prior to January 15, 2008, are time-barred. CashNet also moves for summary judgment asserting that it is entitled to judgment as a matter of law on Banks' post-January 15, 2008, claims because Banks cannot establish a prima facie case for discrimination or retaliation.

*1. Timeliness of Claims*

In order to pursue a civil action for violation of Title VII, the plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged adverse employment action. 29 U.S.C. § 626(d)(2). Banks filed his EEOC charge of discrimination on November 24, 2008. Therefore, any allegations of discrimination occurring prior to January 28, 2008, are untimely. Banks' claim that his supervisor Karen Schwerman harassed him based on his race by unfairly criticizing his work performance falls outside the 300-day time period. The undisputed facts show that Schwerman ceased to be Banks' supervisor on January 15, 2008, and Banks admitted that she committed no other improper acts after that date. Bank's claim that he was denied promotion in July of 2007 based on his religion is also

untimely. Accordingly, CashNet is entitled to judgment as a matter of law on those claims.

*2. Race Discrimination*

Banks alleges that he was harassed, retaliated against, and discharged based on his race. In order to prevail on his claim of racial discrimination, Banks must present direct evidence that his race improperly motived the employment decision, or rely on indirect and circumstantial, evidence through application of the *McDonnell-Douglas* burden shifting approach. *McDonnell-Douglas v. Green*, 411 U.S. 792 (1973). There is no direct evidence of racial discrimination in the record. Therefore, the Court applies the burden-shifting method. Banks has the initial burden of establishing a prima facie case of race discrimination by showing that: (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside of the protected class received more favorable treatment. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). If Banks establishes a prima facie case of racial discrimination, then the burden shifts to CashNet to articulate a legitimate, nondiscriminatory reason for its action *Id.* At that point, Banks must show that CashNet's proffered reasons are merely pretextual. *Hobbs v. City of Chicago,* 573 F.3d 454, 460 (7th Cir. 2009).

Here, the undisputed evidence shows that Banks is unable to establish a prima facie case of discrimination because he cannot show that he met his employer's legitimate job expectations, or that similarly situated employees outside the protected class received more favorable treatment. It is undisputed that Banks received several written disciplinary warnings for complaints from customers about his demeanor and for failing to comply with procedures for handling customer accounts. *See Burks v. Wisconsin Dept. of Trans.*, 464 F.3d 744, 753 (7th Cir. 2006)(court concluded that the plaintiff had not presented sufficient evidence that she was

6

meeting her employer's expectations at the time of her termination despite a positive performance evaluation in her work history). Additionally, Banks has not put forth any evidence that similarly situated employees were treated differently. Banks has not presented any comparable individuals. Without such evidence, Banks is unable to prevail on his race discrimination claim. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). Accordingly, Banks cannot establish a prima facie case of race discrimination and this Court need not reach the question of whether CashNet's proffered reason for Banks' termination is pretextual. *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir. 1997). Nevertheless, CashNet's proffered reason, Banks' misconduct, is supported by the record indicates that two weeks after Banks received a final written warning a customer complained to CashNet that Banks had been very rude during the customer's call. Khwamec Rojas, the Section Manager, was the same person that made the decision to both hire and to fire Banks, a fact that usually suggests a non-discriminatory reason for the termination. *See Johnson v. Zema Systems Corp.*, 170 F.3d 734, 745 (7th Cir. 1999). This Court grants summary judgment in favor of CashNet on Banks' race discrimination claim.

*3. Religious Discrimination and Failure to Accommodate*

Banks also alleges discrimination based on his religion and failure to accommodate his religious practice by refusing to change his schedule from a Sunday workday. Analysis of religious discrimination claims employs a similar burden-shifting structure to racial discrimination claims. Banks must first establish a prima facie case of discrimination by showing: (1) his bona fide religious practice conflicts with an employment requirement, (2) he notified CashNet of the practice, and (3) the practice was the basis for an adverse employment action. *Porter v. City of Chicago,* 700 F.3d 944, 951 (7th Cir. 2012). If Banks can establish a

prima facie case of discrimination, the burden shifts to CashNet to show it reasonably accommodated the religious practice or to show that any reasonable accommodation would result in undue hardship. *Id.*

Here, CashNet does not dispute the issue of whether Banks has a bone fide religious practice that would conflict with Sunday employment. Rather, the second and third elements are at issue. The undisputed facts show that Banks never raised his religious practice or his desire to attend Sunday services as the reason for his requests for a shift change. "Implicit within plaintiff's prima facie case is the requirement that plaintiff inform his employer of both his religious needs and his need for accommodation." *Redmond v. GAF Corp.*, 574 F.2d 897, 901 (7th Cir. 1978).

The record shows that CashNet made Banks aware from the time of his interview with the company that the shift he would be working was 8:00 a.m. to 4:30 p.m. Sunday through Thursday. Banks also did not state on his employment application that he was unable to work on Sundays. Indeed, the evidence in the record shows that the only reason Banks ever provided anyone for his request to change shifts was his perception that working Fridays as opposed to Sundays was more lucrative and he felt financially disadvantaged by working the slower call volume day of Sunday. CashNet could not have accommodated Banks' religious practice if it had no notice that religion was the reason for the request. Moreover, without any knowledge of Banks' religious practices or desire to attend religious services that conflicted with his Sunday work schedule, CashNet could not have made any employment decision or taken any adverse employment action based on Banks' religious convictions. The undisputed evidence also shows that CashNet offered to accommodate Banks' request for a shift change by transferring him to the 3 p.m. to midnight shift, and Banks declined the offer. Therefore, Banks cannot establish a

prima facie case for religious discrimination and CashNet is entitled to judgment as a matter of law on this claim.

*4. Retaliation*

For reasons already addressed elsewhere in this opinion, Banks is unable to survive summary judgment on his retaliation claim. Banks alleges that he was discharged in retaliation for filing an internal complaint against Schwerman for harassment based on his race. However, he cannot meet his burden under either the direct or the indirect methods of proof. The undisputed facts show that CashNet terminated Banks' employment due to ongoing performance problems and rude behavior towards a customer. Additionally, Banks cannot show that he was meeting CashNet's legitimate employment expectations and has not identified any similarly situated individuals that were treated more favorably. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)(setting forth the requirements for establishing a prima facie case of retaliation). Therefore, this Court grants summary judgment in favor of CashNet on this issue.

**Conclusion**

Based on the analysis herein, this Court grants summary judgment in favor of CashNet and dismisses Banks' complaint with prejudice. Civil Case Terminated.

IT IS SO ORDERED.

Date: April 8, 2013.

Entered: _____
Sharon Johnson Coleman